# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

GEORGE V. WILSON,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant.

Case No. 08-CV-643-FHM

## OPINION AND ORDER

    Plaintiff, George V. Wilson, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

    The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

---

[1] Plaintiff's October 28, 2005, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Richard J. Kallsnick was held April 22, 2008. By decision dated May 12, 2008, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 5, 2008. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

Plaintiff was 27 years old on the alleged date of onset of disability. He has a high school education and formerly worked as food service worker, cashier, truck driver, and stock clerk. He claims to have been unable to work since September 1, 2005, as a result of hypertension, obesity, mood and affective disorders, and borderline intellectual functioning. The ALJ determined that, after consideration of the entire record, Plaintiff does not have a severely limiting exertional impairment, and that from a mental capacity standpoint he retains the functional capacity to perform a full range of routine repetitive work related functions, and some more complex job tasks, under routine instruction, dealing primarily with objects rather than with data or people, except on an incidental basis. [R. 33, 37]. Based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ: failed to properly weigh medical source opinions; propounded an improper hypothetical question to the vocational expert; failed to

2

perform a proper credibility determination; and failed to properly evaluate Plaintiff's mental retardation at step 3.

## ALJ's Analysis of Medical Opinion Evidence

The ALJ discussed the reports of the consultative examiners, the reports of the agency's experts who reviewed the medical record, and records of the team who treated Plaintiff at CREOKS Mental Health Services. The ALJ found the assessments of the agency reviewing experts were a reasonable reading of the record as to Plaintiff's functional capacity and were in accord with the whole of the record. [R. 30]. Plaintiff asserts that the ALJ's decision should be reversed because the ALJ "did not demonstrate how or why the reports were in accord with the . . . [record]" and "ignored that the evaluations of the reviewers are not even in accord with one another." [Dkt. 17, p. 3].

There are minor differences between the agency reviewer's evaluations. In completing the Psychiatric Review Technique form which assesses the "B" criteria of mental health Listings,[2] the agency expert found Plaintiff had a "mild" level of difficulty in maintaining social functioning. [R. 182]. The second agency expert marked that area "moderate." [R. 218]. However, when the agency experts assessed Plaintiff's work-related functional limitations, they arrived at the same conclusion.

The first agency expert found that the medical record supported moderate limitations in the ability to understand, remember and carry out detailed instructions, and a moderate limitation in the ability to interact appropriately with the general public. [R. 168, 169]. In the narrative portion of the functional capacity assessment, the agency expert stated:

---

[2] The Listings of Impairments describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity.

3

> He can remember, understand and carry out simple and some complex instructions under routine supervision. He can relate to coworkers, supervisors and the general public in an incidental manner. He can adapt to a work environment.

[R. 170]. The second agency expert found that Plaintiff had the same moderate limitations with respect to detailed instructions and the ability to interact with the public, [R. 222], and also found moderate limitations in the ability to accept instructions and criticism from supervisors and to get along with coworkers or peers. [R. 223]. In the narrative portion of the functional capacity assessment, the second agency expert stated:

> Claimant can understand, remember, and carry out simple and some more complex instructions under routine supervision. He can relate to co-workers and supervisors, but not the general public, in an incidental fashion.

[R. 224]. Thus, contrary to Plaintiff's assertions, the reviewers opinions are not "at odds with one another." [Dkt. 17, p. 3]. The functional capacity assessments of the reviewers are virtually identical. Furthermore, the limitations contained in the reviewer's functional capacity assessments are included in the ALJ's RFC finding: "the claimant retains the residual functional capacity to perform a full range repetitive work related functions, and some more complex job tasks, under routine instructions (unskilled and low skilled work dealing primarily with objects rather than with data or people)." [R. 33]. The court finds the minor differences between the opinions of the agency experts and the ALJ's treatment of them provides no basis for overturning the ALJ's decision.

In performing the required analysis of Plaintiff's functional limitations due to mental disorders, the ALJ outlined the reports made by examining experts, including the report of consultative examiner, Dr. Rawlings, who reported no significant limitation in social interaction other than a moderate limitation in the ability to interact with the general public.

[R. 21-22]. Based on the information outlined, the ALJ found that the evidence documents an absence of more than minimal limitations in social functioning due to mental limitations or disease. [R. 22]. The ALJ thus explained the rationale for his rating of Plaintiff's limitation of difficulties in maintaining social functioning as "mild."

Plaintiff argues that the ALJ ignored limitations found to exist by Dr. Rawlings. Dr. Rawlings performed a psychological evaluation of Plaintiff and completed a Medical Source Statement in which he found Plaintiff had marked limitations in the ability to understand, remember and carry out detailed instructions. [R. 145, 146]. Dr. Rawlings also noted that Plaintiff had moderate limitation in the ability to perform activities within a schedule, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 145]. Dr. Rawlings summarized his findings, as follows:

> CI is somewhat of a borderline vocational prospect. Excellent parttime worker, especially with some support from supervisor. Could be successful in <u>certain</u> work settings on a full time basis <u>baring</u> [sic] interference from health or environmental factors. Simple task is best. "Dignity of failure" should be respected until work record or other evidence says otherwise.

[R. 147] (emphasis in original). The ALJ quoted these findings in the decision, and made the following conclusion:

> There is no indication of inability to concentrate sufficiently to remain focused and attentive at a work cite [sic] performing routine work related tasks. Accordingly, the undersigned finds that the claimant's depression or designated problems in living of a mental health/behavioral nature do <u>not cause, impose, or reflect a significant limitation in the claimant's ability to meet the concentration, persistence, or pace requisites for performing routine work related functions</u>.

[R. 23]. The ALJ acknowledged Dr. Rawlings' report, included the findings in his analysis, and determined that the difficulties identified by Dr. Rawlings did not preclude the limited range of work within the residual functional capacity.

### Evaluation of Plaintiff's Mental Retardation at Step 3

At step 3 of the evaluative sequence, the ALJ is required to compare the medical evidence to the Listings of Impairments contained in the regulations and to discuss the evidence and the reasons for determining that Plaintiff is not disabled at step three. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Listing of Impairments describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. It is well established that it is Plaintiff's burden to show that his impairment is equivalent to a Listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). It is also well established that all of the specified medical criteria must be matched to meet a Listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

Plaintiff argues that he meets Listing §12.05C[3], mental retardation, which requires:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1.  The ALJ noted that Dr. Rawlings reported that test results indicated Plaintiff had a Verbal IQ score of 91, a Performance IQ score of 69, and a Full Scale IQ score of 79. [R. 26].  The ALJ acknowledged that Plaintiff's Performance IQ score of 69 meets the IQ requirement of Listing § 12.05C. [R. 27-28].  The ALJ's through analysis of the evidence demonstrates that Plaintiff does not meet all of the criteria of Listing §12.05C even though the ALJ did not specifically relate his analysis to the language of Listing 12.05C concerning whether, in addition to his IQ score, Plaintiff had a physical or other mental impairment which imposed additional and significant work-related limitations of function.

The ALJ analyzed whether Plaintiff's mental impairment resulted in two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. [R. 28-29].  The ALJ noted Dr. Smallwood's assessment that Plaintiff had a documented history of depression, bipolar, ADHD and parent/child relational problems, and that Dr. Smallwood concluded that Plaintiff retained the ability to understand, remember and carry out simple and some more

---

[3] Plaintiff also asserts that he meets Listing § 12.05 because he demonstrated deficits in adaptive functioning which occurred before the age of 22. [Dkt. 17, p. 10]. However, the criteria to which Plaintiff refers merely define the term "mental retardation."  The Regulations are unequivocal that "[t]he required level of severity for [mental retardation] is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App.1, §12.05.

7

complex instructions under routine supervision and can relate to co-workers and supervisors, but not the general public in an incidental fashion. [R. 29, 30]. The ALJ also noted Dr. Kamschaefer's consideration of Plaintiff's depressive syndrome which he found did not result in any more than a mild limitation in the above mentioned functional areas. [R. 30]. That analysis demonstrates Plaintiff does not meet the criteria of Listing §12.05C of having a mental limitation in addition to mental retardation that imposes an additional and significant work-related limitation of function.[4]

The ALJ also analyzed Plaintiff's adaptive functioning in various areas suggested by the DSM-IV:[5] communication; self-care and home living; social skills; use of community resources; self-direction; functional academic skills; work; leisure; and health and safety issues. The ALJ compared the evidence of Plaintiff's ability to function to the definitions provided in the various areas. In so doing the ALJ again demonstrated that Plaintiff does not have a mental impairment which imposes an additional and significant work-related limitation of function. [R. 31-33]. The ALJ acknowledged that Plaintiff's actions of arguing with managers, acting rude toward customers, failing to follow managerial instructions, failing to be punctual, and failing to perform at a consistent pace would make it difficult to maintain steady competitive employment. [R. 35]. However, the ALJ found that the record does not support the claim that an illness, disease, or disease process, rather than Plaintiff's behavior choices causes these work-related problems. [R. 35-36]. The ALJ's decision thus amply demonstrates the reasons for his determination that Plaintiff does not

---

[4] The ALJ's finding that Plaintiff does not have any limiting exertional impairments is not challenged.

[5] *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV).

8

meet the Listing criteria for §12.05C. The undersigned finds that the ALJ's decision in this regard is supported by substantial evidence in the record.

### Hypothetical Questioning of the Vocational Expert

Plaintiff argues that the ALJ's decision should be reversed because the ALJ propounded a hypothetical question which differs from the RFC findings and does not include all of the documented limitations. Plaintiff also argues that the ALJ failed to properly evaluate the testimony of the vocational expert.

The court rejects Plaintiff's assertion that the ALJ erred by failing to include exertional and strength limitations. The ALJ found that Plaintiff does not have any physical impairment that limits his ability to perform work. [R. 15-16]. Plaintiff has not pointed to any material in the record that would support the inclusion of physical limitations in the RFC or the hypothetical questioning of the vocational expert.

Plaintiff asserts, but does not explain how the ALJ's hypothetical questioning of the vocational expert differed from the RFC contained in the written decision. The court declines to address arguments that are not developed in Plaintiff's briefing. *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003)(declining to speculate on Plaintiff's behalf in order to address arguments that are insufficiently developed in briefing).

Plaintiff also claims that the hypothetical question posed to the vocational expert was incomplete in that it failed to include all of his limitations. [Dkt. 17 pp. 6-7] In his Reply Brief [Dkt. 19, p. 2] Plaintiff makes an argument to the effect that the ALJ was required to credit the vocational expert's testimony that a person with the limitations identified by Dr. Rawlings would find it difficult to sustain full time competitive work. [R. 64]. While it is true that testimony elicited by hypothetical questions that do not relate with precision all of a

claimant's impairments cannot constitute substantial evidence to support the Secretary's decision, *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991), in posing a hypothetical question the ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ.  See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). The court finds that the hypothetical question presented to the vocational expert was sufficient, in that it contained all of the limitations found to exist by the ALJ and which are supported by the record.  The court has fully addressed Plaintiff's allegations about the ALJ treatment of the opinions expressed in the medical record.

### **Credibility Analysis**

At page 26 of the 29 page decision, the ALJ made the following finding:

> It is clearly demonstrated that t [sic] the claimant's impairments could reasonably be expected to reflect incapacity to perform jobs which require the ability, talent, skill, interest, credentialing, socialization, and cognitive perceptual and processing speed needed to perform some jobs. However, the claimant's statements concerning the intensity, persistence and limiting effects of his dysfunctional symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment to perform simple work related tasks and meet the behavioral demands required for performance of routine work related tasks (simple jobs) and some more complex tasks in a work environment working primarily with objects and only incidentally with data or people.

[R. 37].  Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to make a proper credibility determination.

Although the explanation is not contained in the quoted paragraph, throughout the decision the ALJ thoroughly explained his reasons for discounting Plaintiff's allegations that he could not work. [R. 34-37].  Since the ALJ set forth the specific evidence he relied on in evaluating Plaintiff's credibility, he is not required to make a "formalistic factor-by-factor

recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ set forth the specific evidence he relied upon, applied the correct legal standards in evaluating Plaintiff's allegations, and his determination on this matter is supported by substantial evidence in the record. Because the ALJ properly linked his credibility finding to the record, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determinations. See *James v. Chater,* 96 F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

## Claimant's Right to Due Process

Plaintiff asserts that he was denied due process because the ALJ cited to scholarly texts and articles or treatises in his decision.. In support of this assertion Plaintiff cites to, but does not discuss, *Allison v. Heckler*, 711 F.2d 145 (10th Cir.1983). In that case the Tenth Circuit held that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report." *Id*. at 147. In the present case Plaintiff does not point to any medical reports received after the hearing. Unlike the *Allison* case, here Plaintiff was not denied the opportunity to cross-examine or offer rebuttal evidence.

The ALJ cited to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV) and articles, primarily in footnotes, to help define the terms used by medical professionals in the medical record. The court rejects Plaintiff's assertion that the ALJ's use of these materials somehow constitutes a denial of due process.

## **CONCLUSION**

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 14th day of January, 2010.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE